**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JEROME MADISON,** | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 4:18-cv-671-O** |
| | § | |
| | § | |
| **CHAROLETTE COURTNEY and** | § | |
| **AMERICAN AIRLINES, INC.,** | § | |
| **Defendants.** | § | |
| | § | |

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS**

Plaintiff, Jerome Madison, pursuant to Federal Rule of Civil Procedure 37(a)(1) and (c)(1), moves for an order compelling Defendants, Charolette Courtney and American Airlines, Inc. ("American"), to: (1) make full disclosure of the details of their insurance agreement(s) as required by Fed. R. Civ. P. 26(a)(1)(A)(iv); (2) provide complete answers to Interrogatories as required by Fed. R. Civ. P. 33: and (3) produce documents requested by Plaintiff as required by Fed. R. Civ. P. 34. Plaintiff further requests sanctions under Rule 37 and under the Court's inherent authority to impose sanctions, for Defendants' failure to comply with their initial disclosure obligations concerning insurance coverage. The bases for the motion are stated in the Brief in support that is incorporated herein.

**BRIEF IN SUPPORT**

I. **Both Defendants Must Disclose The Full Details of Their Insurance Agreements**

Federal Rule of Civil Procedure 26(a)(1)(A)(iv) requires all defendants in civil cases to provide to plaintiffs "for inspection and copying as under Rule 34, any insurance agreement under

which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." On May 22, 2018, Defendants' counsel served joint initial disclosures on Plaintiff's counsel in the instant case that provided only the following statement concerning insurance: "American Airlines has sufficient liability insurance in place to provide coverage for Plaintiff's claims arising from the subject incident." *See* Copy of Initial Disclosures attached hereto as **Exhibit A**. That statement unquestionably violates the mandate of Rule 26(a)(1)(A)(iv), because it does not provide any insurance agreement at all for "inspection and copying as under Rule 34." The rule clearly requires production of a defendant's complete and unredacted insurance policy. *B&E Escort, Inc. v. Smokey Point Distributing, Inc.,* Case No. 13-cv-794-JED-TLW (N.D. Okla., December 10, 2014); *Robin v. Weeks Marine, Inc.* Case No. 17-1539 (E.D. La., August 3, 2017). Moreover, the statement says nothing about Defendant Courtney's insurance coverage, or whether punitive damages are covered by the so-called "sufficient" liability insurance that American claims to have. If Plaintiff succeeds in obtaining a judgment against Defendants, the judgment may have a significant punitive damages component, *see Claiborne v. Illinois Central R.R.,* 583 F.2d 143 (5th Cir. 1978), *cert. denied,* 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed. 2d 303 (1979)(punitive damages available for §1981 violations). Only an examination of the language of the relevant policy or policies will reveal whether they exclude coverage for punitive damages.

Defendants' failure to produce their insurance policies played a significant role in the colossal failure of the Court-ordered mediation that took place in this action on August 10, 2018. No insurance representative appeared on behalf of either Defendant, and Defendant Courtney failed to appear at all at the mediation. A lone employee of American appeared and claimed vaguely, in response to a direct question from the mediator about the extent of his authority to

settle the matter, that he possessed "sufficient authority" to settle Plaintiff's claims, without providing any further elaboration. When the employee then proceeded to make only an extremely low offer and refused to increase it or to consider a bracket of potential settlement values suggested by the mediator, neither the mediator nor Plaintiff's counsel could ascertain from the employee whether he was dealing solely with a limited amount of American's money under a self-insured retention (SIR) arrangement, or whether he was also authorized to offer any of the "sufficient liability insurance" to which Defendants had vaguely alluded in their initial disclosures. As a result of this dearth of relevant information, the negotiations quickly broke down and further attempts at mediation became impossible.

> "The goal of the initial disclosure requirement is to accelerate the exchange of basic information about the case." *Fitz, Inc. v. Ralph Wilson Plastics Co.*, 174 F.R.D. 587, 588 (D.N.J. 1997) (internal quotations and citations omitted); *see also, Stamps v. Encore Receivable Mgmt., Inc.*, 232 F.R.D. 419, 422 (N.D. Ga. 2005) ("The goal of the initial disclosure requirement is to get out basic information about the case at an early point.") (citing Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2053). This early production of information "functions to assist the parties in focusing and prioritizing their organization of discovery." *City & Cty. of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Ca. 2003). The initial disclosures also enable the parties to assess their risks and undertake an informed settlement analysis as well as facilitating the efficient administration of a case. *Id.*

*King v. City of Waycross,* Case No. 5:14-cv-32, slip op. at 5 (S.D. Ga., September 17, 2015). "The initial disclosures are not optional. They must be made. Furthermore, a motion to compel is the appropriate remedy in the event a party fails or refuses to make these disclosures. *See* Fed. R. Civ. P. 37(a)(3)(A)." *SPV-LS, LLC v. Transamerica Life Ins. Co.,* Case No. 4:14-cv-04092-LLP (D.S.D., July 6, 2016). Since Defendants have utterly failed to comply with their disclosure obligations, they should be ordered to produce all relevant insurance agreements (including, without limitation, the full details of any SIR arrangements) immediately.

II.     **As a Sanction For Their Noncompliance, Defendants Should Be Required to Pay Plaintiff's Costs Incurred In the Failed Mediation**

Had Defendants made a timely and full disclosure of their insurance agreements, Plaintiff's counsel and the mediator would have had the information needed to assess whether negotiations at the mediation were taking place with a person who had actual and complete authority to proceed in good faith at the mediation on behalf of both Defendants and with the insurance coverage available. As described above, Defendants' failure to provide that information, and the vague assertion of American's employee, led to the mediation breaking down because counsel and the mediator could not determine whether the sole employee of American attending the mediation was only negotiating within the limits of that company's SIR arrangement. That uncertainty and the eventual breakdown of the negotiations caused a substantial waste of time and money attending a procedure that might otherwise—with appropriate representatives present—have led to a settlement. Plaintiff should not have to bear the unnecessary costs associated with Defendants' failure to follow the Rules. A just result would be to order Defendants to pay Plaintiff's half of the mediator's bill and the travel expenses that Plaintiff incurred in having his counsel travel to the failed mediation.

The Court has broad discretion under Fed. R. Civ. P. 37(c)(1) to fashion appropriate sanctions for parties' failure to disclose information required by Rule 26(a). *Jo Ann Howard & Assocs., P.C. v. Cassity,* Case No. 4:09-cv-01252-ERW (E.D. Mo., July 22, 2015)(citing *Wegener v. Johnson,* 527 F.3d 687, 692 (8th Cir. 2008). "In deciding a remedy, the court should consider the reason for the noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Id.* Defendants cannot have any good reason for the noncompliance, other than to keep specific information about their insurance coverage out of

4

Plaintiff's hands in violation of Rule 26(a). Their noncompliance was a central factor in causing the breakdown of the mediation, which should have been entirely foreseeable on their part, and the breakdown caused Plaintiff to incur costs unfairly. Since evidence of insurance coverage is inadmissible at trial, sanctions concerning use of the evidence at trial are inapplicable. The only sanctions that fit the conduct are monetary ones.

The Court also has authority to award sanctions pursuant to its inherent authority "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Plaintiff incurred $2,110 in the mediation as his half of the mediator's fee, and he incurred $1,150.32 in travel costs for his attorney to travel to the mediation (Plaintiff's attorney traveled from Denver, Colorado, where he was taking the deposition of one of Defendants' expert witnesses). An itemization of those costs is attached hereto as **Exhibit B**. Defendants should be ordered to pay those $3,260.32 in costs to Plaintiff as a sanction for their noncompliance with Rule 26(a).

III.   **Defendants Should Be Ordered to Respond to Plaintiff's Properly Propounded Discovery Requests**

On May 11, 2018, Plaintiff served First Interrogatories and First Requests for Production on Defendant Courtney. Copies of the discovery requests are attached hereto as **Exhibit C** and **Exhibit D**, respectively. Defendant Courtney served responses to the First Interrogatories and First Requests for Production on June 11, 2018, copies of which are attached hereto as **Exhibit E** and **Exhibit F**, respectively. Courtney also served supplemental responses to the Requests for Production on July 17, 2018, a copy of which is attached hereto as **Exhibit G**.

Also on May 11, 2018, Plaintiff served First Interrogatories and First Requests for Production on American. Copies of the discovery requests are attached hereto as **Exhibit H** and **Exhibit I**, respectively. American served responses to the First Interrogatories and First Requests

for Production on June 11, 2018, copies of which are attached hereto as **Exhibit J** and **Exhibit K**, respectively. American also served supplemental responses to the Requests for Production on July 17, 2018, a copy of which is attached hereto as **Exhibit L**.

As discussed in the subsections below, Defendants' responses are inadequate and Defendants should be compelled to provide the requested information. (Terms appearing in bold are defined terms whose definitions may be found in the attached exhibits).

### a.  Interrogatories Propounded to Courtney

**INTERROGATORY 1:**   Please state the names, job titles (as of the date of **Flight 1087**) and current assigned base locations of all members of the **Flight Crew** and **Cabin Crew** of **Flight 1087** with whom you have communicated at any time concerning the events described in the Complaint filed in this civil action, and state the dates and contents of all such communications.

 **ANSWER:** Tara Hanselman, Flight Attendant, Based in St. Louis, MO

Rosalind Groves, Flight Attendant, based in St. Louis, MO

After the lawsuit was filed, Ms. Courtney discussed the incident with Ms. Hanselman and Ms. Groves.

**DEFICIENCIES:**   Although Courtney named two members of the Cabin Crew with whom she spoke, she did not provide dates of the communications or the contents of the communications as requested. She should be ordered to provide the dates and contents of all such communications.

**INTERROGATORY 2:**     Please state the names, job titles (as of the date of **Flight 1087**) and current assigned base locations of all **ATL Station Employees** who worked on January 21, 2016 at ATL with whom you have communicated at any time concerning the events described in the Complaint filed in this civil action, and state the dates and contents of all such communications.

**ANSWER:**   Ms. Courtney does not recall any conversations with ATL Station employees about this incident *other than those that occurred on the date of the incident*." (Emphasis added).

**DEFICIENCIES:**     This answer is evasive. It inaccurately suggests that communications on the date of the incident were excluded from the parameters of the Interrogatory, but they were not. The Interrogatory sought the contents of communications that occurred "*at any time*." (Emphasis added). Conversations that Courtney had with ATL Station employees immediately after the incident occurred are clearly relevant and discoverable. Moreover, the answer refers solely to "conversations," whereas the scope of the Interrogatory included all "communications" of any type. She should be ordered to provide the dates and contents of all communications, including the names of the ATL Station employees with whom she communicated.

---

**INTERROGATORY 3:**     Please state whether anyone other than Plaintiff has made a complaint to **Courtney**, or to a school representative, club representative, or employer, concerning any allegation that **Courtney** discriminated against, or was insensitive toward, a person based on the person's **Race** or **Ethnic Affiliation**, and for each such complaint

please state the name and address of the complaining party, the date of the complaint or incident complained or, and the subject matter of the complaint.

**OBJECTION:**          Defendant objects to this Interrogatory as irrelevant to Plaintiff's claims in this matter. Defendant further objects to this interrogatory to the extent that it is requesting information related to any complaints made to a "school representative or club representative" as the information is burdensome and irrelevant to the matters in this case.

**ARGUMENT:**          Evidence of other complaints of discriminatory treatment by Defendant Courtney are clearly relevant to the issue of racial animus, which is one of the elements that Plaintiff must prove to sustain his claim under 42 U.S.C. §1981. *See, Body by Cook, Inc. v. State Farm Mut. Auto. Ins.,* 869 F.3d 381, 386 (5th Cir. 2017). As this Court noted in its Order on Defendants' motion to dismiss the complaint, "discriminatory motive may be—and commonly is—demonstrated by circumstantial evidence." Order dated April 24, 2018 [D.E. 36], at 7 (citing *Body by Cook, Inc.,* 869 F.3d, at 386). Evidence of other instances in which Courtney treated someone in a discriminatory or insensitive manner based on the person's race or ethnicity is relevant circumstantial evidence that Courtney is biased against non-white persons and therefore acted with racial animus toward Plaintiff. "Courts have traditionally construed 'relevance' broadly: information is relevant if it encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Coughlin v. Lee,* 946 F.2d 1152, 1159 (5th Cir. 1991). "Unless it is clear that the information sought can have no possible bearing on the claim or defense of a party, the request for discovery should be allowed." *S.E.C. v. Brady,* 238 F.R.D. 429, 437 (N.D. Tex. 2006).

Courtney has not cited any details in support of her conclusory argument that providing the details of such incidents would be "burdensome." As this Court has stated:

> The Federal Rules of Civil Procedure state that the court may limit discovery of material, even if relevant, where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C)(iii). After the moving party establishes the materials requested are within the scope of permissible discovery, the party resisting discovery must show specifically how each request is not relevant or is overly broad, burdensome or oppressive. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1485 (5th Cir. 1990).

> . . . Specific information must be provided as to the efforts or investigations that would be necessary to produce the documents requested. *See McLeod, Alexander, Powel & Apffel, P.C.,* 894 F.2d at 1485 (recitations of expense and burdensomeness that are merely conclusory insufficient [to] defeat motion to compel).

*In re: Dupuy Orthopaedics, Inc. (Pinnacle Hip Implant Products Liability Litigation),* MDL Docket No. 3:11-MD-2244-K (N.D. Tex., May 15, 2013), at *4-5. Magistrate Judge Horan has elaborated on the requirement: "A party resisting discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Gondola v. USMD PPM, LLC,* 223 F. Supp. 3d 575, 579 (N.D. Tex. 2016). Defendant Courtney has made no such showing. She should be ordered to produce all of the requested information concerning other complaints of discrimination and racial/ethnic insensitivity.

_____

**INTERROGATORY 4:**   Please state the **Race** and **Ethnic Affiliation** of Captain James Medd, Employee Number 13569, who was the Captain of American Airlines Flight 683

between Detroit Metropolitan Wayne County Airport (DTW) and Miami International Airport (MIA) on June 29, 2007.

**OBJECTION:**         Defendant objects to this Interrogatory as irrelevant and harassing. Plaintiff is already aware that the interaction between Ms. Courtney and Mr. Medd involved TSA security clearance and had nothing to do with either parties' [*sic*] race and/or ethnic affiliation. Further, this incident took place 9.5 years before the Incident that is the basis of this suit and has no relation to any of Mr. Madison's claims.

**ARGUMENT:**         According to documents produced by American in the prior state court litigation, Captain Medd declined to exit an aircraft that was under his command (and that was scheduled for departure in a few minutes) to come to Defendant Courtney's aid at the airport's TSA checkpoint in the terminal, where Courtney had arrived late for the flight and produced an expired ID badge. Following Captain Medd's refusal to assist her in a predicament of her own making, she took it upon herself to file a complaint against him with the airline, alleging numerous breaches of protocol during the flight, most of which had nothing at all to do with the TSA issue. Captain Medd's response to the complaint, which he sent to the airline's Chief Pilot, alluded to there being more to the story than was reflected in Courtney's complaint, stating "let's stir the pot and get this out in the open." Again, prior instances of discriminatory treatment of others is relevant circumstantial evidence of racial animus. There is nothing "irrelevant and harassing" about the Interrogatory, and Courtney should be ordered to respond to it.

---

**INTERROGATORY 5:**   Please identify by name, address, telephone number, **Race** and **Ethnic Affiliation** each passenger whose name appears in the unredacted version of

**Courtney**'s written summary dated May 7, 2001 of an incident that occurred on "Flight 36" that was operated by **American** between Los Angeles International Airport (LAX) and Washington Dulles International Airport (IAD) on May 5, 2001, which written summary was provided by counsel for **American** to counsel for Plaintiff in redacted form in the prior litigation between Plaintiff and **American** in California state court.

**<u>OBJECTION:</u>**    Defendants [*sic*] object to this Interrogatory as irrelevant and harassing. Plaintiff is already aware that the interaction between Ms. Courtney and this passenger was related to the passenger wanting to know what she was going to be served for dinner while Ms. Courtney and other flight attendants were trying to perform dinner service and had nothing to do with either parties' [*sic*] race and/or ethnic affiliation. Further, this incident took place nearly 15 years before the Incident that is the basis of this suit and has no relation to any of Mr. Madison's claims.

**<u>ARGUMENT:</u>**    According to what little information can be gleaned from heavily redacted documents produced by American in the prior state court litigation, a passenger became unhappy when Defendant Courtney refused to tell her what the contents of her special dietary needs meal would be. In what appears to be a situation similar to the one alleged in the instant action, Defendant Courtney refused to provide basic services to a First Class passenger whom she described in an incident report as being an "Indian ? woman—middle easter" [*sic*]. The documents previously produced by American indicate that Courtney attempted to have that flight met at its destination by police (presumably to have the woman arrested for inquiring about the contents of her meal), a request that the Captain of the flight declined to Defendant Courtney's considerable irritation. Courtney did succeed in having service to this non-white First Class passenger limited to "$H_2O$."

11

(The report does not indicate that the passenger was inebriated; in fact, it indicates that she had previously been served hot tea.) This is further evidence of Defendant Courtney having a problem with a First Class passenger being non-white. Again, prior instances of discriminatory treatment of others is relevant circumstantial evidence of racial animus. There is nothing "irrelevant and harassing" about the Interrogatory, and Courtney should be ordered to respond to it.

---

**INTERROGATORY 6:**   Please identify all organizations (including, without limitation, private clubs, social clubs, political action committees, political groups, alumni groups, charities, social action groups and/or support groups) of which **Courtney** is a member.

**OBJECTION:**        Defendant objects to this Interrogatory as irrelevant and harassing. Ms. Courtney's involvement in professional or social organizations has no relation to Plaintiff's claims in this matter.

**ANSWER:**    Subject to and without waiving the foregoing objection:

Above and Beyond
Association of Professional Flight Attendants
Wings

**ARGUMENT:**        As noted above, Plaintiff must prove racial animus, and is allowed to do so through circumstantial evidence. Defendant Courtney's membership in social organizations can provide relevant circumstantial evidence, particularly if such organizations enforce "whites only" membership restrictions, or advocate for issues of white supremacy or white nationalism. Since the three listed organizations follow her caveat that they are named "[s]ubject to and without waiving" the objection, Plaintiff is left without any assurance that they constitute a complete list of Defendant Courtney's

affiliations, rather than a carefully selected partial list. She should be ordered to provide a complete list, or to confirm that the list already provided is a complete one. As Magistrate Judge Horan noted in *Gondola*, answers given "subject to" such objections are improper under the Federal Rules. 223 F. Supp. 3d, at 584-85.

---

**INTERROGATORY 7:**   Please identify each **Social Media** account held by Courtney during any of the past five years, and for each such account, provide **Courtney**'s current user ID and password.

**OBJECTION:**       Defendant objects to this Interrogatory as irrelevant and harassing. Plaintiff is conducting an unreasonable fishing expedition, seeking everything in Defendant Courtney's personal life. Plaintiff is not entitled to unfettered access to Defendant's social media accounts.

**ANSWER:**   Subject to and without waiving the foregoing objection, Ms. Courtney has profiles on the following social media sites:

Facebook
LinkedIn
Twitter
Instagram

**ARGUMENT:**       As noted above, Plaintiff must prove racial animus, and is allowed to do so through circumstantial evidence. Defendant Courtney's postings on social media sites can provide relevant and valuable circumstantial evidence of her general and specific attitudes toward non-white and minority persons.  Magistrate Judge Horan recognized in *Gondola* that social media postings are not exempt from normal discovery, *see Gondola,* 223 F. Supp. 3d, at 589-91, while noting that some limitations on such discovery are necessary to prevent "unfettered access," *see id.* at 591. Unfortunately, the highly relevant

topic of racial animus does not lend itself easily to instructions that would describe exactly what types of postings must be disclosed. Defense counsel at one point offered to print out the postings and provide them to Plaintiff's counsel, but has not acted on that offer in the numerous weeks since it was made. If the Court will not grant Plaintiff's counsel access to the sites to review their content, then Plaintiff respectfully submits that the extreme importance of this type of discovery should mandate an *in camera* review of the full content of the postings made to sites like Facebook, Instagram and LinkedIn. And since every tweet made by every subscriber to Twitter was archived in the U.S. Library of Congress between 2010 and December 31, 2017, *see* "Library of Congress Will No Longer Archive Every Tweet," https://www.npr.org/sections/thetwo-way/2017/12/26/573609499/library-of-congress-will-no-longer-archive-every-tweet?t=1535988648472 (December 26, 2017)(last accessed September 3, 2018), Defendant Courtney should be required to produce all of her tweets during that same period since they are in the public domain and she is in the best position to collect and produce them.

And again, since the list of sites follows an improper caveat that the sites are named "[s]ubject to and without waiving" the objection, Plaintiff is left without any assurance that they constitute a complete list of Defendant Courtney's social media, rather than a carefully selected partial list. She should be ordered to provide a complete list, or to confirm that the list already provided is a complete one.

---

**INTERROGATORY 8:**     Please identify by name and address each person living in **Courtney**'s neighborhood of "Whitmoor Country Club Subdivision" who is known to

**Courtney** to be of a **Race** other than Caucasian. For each such person, please state the person's **Race**.

**OBJECTION:**          Defendant objects to this Interrogatory as irrelevant and harassing. Plaintiff is conducting an unreasonable fishing expedition, seeking everything in Defendant Courtney's personal life. Defendant further objects that this request improperly invades the privacy of other individuals not associated with this lawsuit and who have no knowledge of the incident made the basis of this suit.

**ANSWER:**     Subject to and without waiving the foregoing objection, Ms. Courtney is not in possession of that information and directs Plaintiff to the Whitmoor Country Club Homeowners' Association.

**ARGUMENT:**          Whether Defendant Courtney has chosen to reside in a racially exclusive gated community is highly relevant to the issue of racial animus. This is clearly within the scope of discoverable information. Courtney has no standing to assert the "privacy" interests of other persons, and her argument that inquiring about someone's race violates such privacy interests is fallacious; the individuals' race is likely to be visible to anyone looking at them. It is equally fallacious for Courtney to assert that she "is not in possession of that information," when the Interrogatory specifically asks for identification of persons "*known to* **Courtney** to be of a **Race** other than Caucasian." (Italics added). The Interrogatory merely asks her whether she knows of any person(s) living in her gated community in St. Louis, Missouri who are non-white, and if so, to provide their name(s) and address(es). She should be ordered to provide the requested information.

---

15

**INTERROGATORY 9:**      Please identify by name and address each person who is a member of Whitmoor Country Club and is known to **Courtney** to be of a **Race** other than Caucasian. For each such person, please state the person's **Race**.

**OBJECTION:**      Defendant objects to this Interrogatory as irrelevant and harassing. Plaintiff is conducting an unreasonable fishing expedition, seeking everything in Defendant Courtney's personal life. Defendant further objects that this request improperly invades the privacy of other individuals not associated with this lawsuit and who have no knowledge of the incident made the basis of this suit.

**ANSWER:**      Subject to and without waiving the foregoing objection, Ms. Courtney is not in possession of that information and directs Plaintiff to the Whitmoor Country Club Membership Committee.

**ARGUMENT:**      Whether Defendant Courtney has chosen to belong to a racially exclusive country club in St. Louis is highly relevant to the issue of racial animus. This is clearly within the scope of discoverable information. Courtney has no standing to assert the "privacy" interests of other persons, and her argument that inquiring about someone's race violates such privacy interests is fallacious; the individuals' race is likely to be visible to anyone looking at them. It is equally fallacious for Courtney to assert that she "is not in possession of that information," when the Interrogatory specifically asks for identification of persons "*known to Courtney* to be of a **Race** other than Caucasian." (Italics added). The Interrogatory merely asks her whether she knows of any person(s) belonging to her country club in St. Louis, Missouri who are non-white, and if so, to provide their name(s) and address(es). She should be ordered to provide the requested information.

16

**INTERROGATORY 11:**     Please identify by title, presentation date(s), and general description of content, each and every lecture, workshop, training modality, course or other type of training offered to **Courtney** by **American** or on **American**'s behalf, at any time from the date of **Courtney**'s initial employment by **American** to the present date, on the subject of diversity in the workplace concerning **Race** and/or **Ethnic Affiliation**.

**ANSWER:**     Defendant is searching for responsive information. Defendant will supplement, subject to a protective order, if responsive information is identified.

**ARGUMENT:**          Defendant has been "searching" for this information for well over three months now, without producing a single piece of information to Plaintiff. The protective order has been in place for nearly three months, *see* Docket Entries 42 and 43, both dated June 14, 2018, although Plaintiff cannot fathom why the requested information would fall within its scope as proprietary information.  Defendant Courtney testified in her deposition in the prior state court litigation that she received notices from American by email instructing her to watch certain training videos online. She therefore could probably locate the requested information simply by searching her emails. Moreover, American raises her training specifically in its answer to one of Plaintiff's Interrogatories (*see* Answer to Interrogatory 1 propounded to American below, portion relating to Courtney). She should be ordered to provide the requested information.

---

**INTERROGATORY 12:**     For any training identified in your answer to Interrogatory 9 [*sic*, should have stated 11], please state whether **Courtney** completed the training, the date(s) of such completion, the manner in which she participated (*e.g.*, live seminar, online,

self-study) and the scoring (if any) that she received on any test or quiz associated with such training, also providing the grading scale applicable to any such test or quiz.

**ANSWER:**   Defendant is searching for responsive information. Defendant will supplement, subject to a protective order, if responsive information is identified.

**ARGUMENT:**        Defendant has been "searching" for this information for well over three months now, without producing a single piece of information to Plaintiff. The protective order has been in place for nearly three months, *see* Docket Entries 42 and 43, both dated June 14, 2018, although Plaintiff cannot fathom why the requested information would fall within its scope as proprietary information. Defendant Courtney testified in her deposition in the prior state court litigation that she received notices from American by email instructing her to watch certain training videos online. Normally, such training videos would have a quiz at the end to ensure that the viewer watched and understood the material. She should be ordered to produce responsive information by a date certain.

---

**INTERROGATORY 13:**    Please state the names, job titles and current assigned base locations of all persons who were responsible for providing diversity training to **Courtney**.

**ANSWER:**   Defendant is searching for responsive information. Defendant will supplement, subject to a protective order, if responsive information is identified.

**ARGUMENT:**        Defendant has been "searching" for this information for well over three months now, without producing a single piece of information to Plaintiff. The protective order has been in place for nearly three months, *see* Docket Entries 42 and 43, both dated June 14, 2018, although Plaintiff cannot fathom why the requested information would fall within its scope as proprietary information. Defendant Courtney should know

who is responsible for such training (if anyone is), or should have been able to obtain such information from her employer during the preceding three and a half months. She should be ordered to produce responsive information by a date certain.

### b. Interrogatories Propounded to American

**INTERROGATORY 1:**   Please state the names, job titles (as of the date of **Flight 1087**) and current assigned base locations of all members of the **Flight Crew** and **Cabin Crew** of **Flight 1087**, and describe what knowledge each such person has of any of the events described in the Complaint filed in this civil action.

**ANSWER:**

Charolette Courtney – Flight Attendant
Current assigned base: St. Louis, MO

Ms. Courtney is a Defendant in this matter. She is the flight attendant working in the first-class cabin on Flight 1087 who Mr. Madison alleges his claims against [*sic*]. She has knowledge of her interactions with Mr. Madison on Flight 1087, as well as her training, work history, and employment history with American Airlines. She has knowledge of the service she offered Flight 1087 as well as her preparation of the drink that Mr. Madison complains about.

Rosaland Groves – Flight Attendant
Current assigned base: St. Louis, MO.

Ms. Groves was a flight attendant working on board Flight 1087. She has knowledge of her interactions with Mr. Madison on Flight 1087, as well as her training, work history and employment history with American Airlines. She has knowledge of her relationship with Ms. Courtney, her skill as a flight attendant, and her professionalism.

Tara Hanselman – Flight Attendant
Current assigned base: St. Louis, MO.

Ms. Hanselman was a flight attendant working on board Flight 1087. She has knowledge of her training, work history and employment history with American Airlines. She has knowledge of her relationship with Ms. Courtney.

**DEFICIENCIES:**   Although the Interrogatory specifically asked about knowledge held by the **Flight Crew** (defined as the pilot and first officer), the answer provides no

information about such knowledge. American should be ordered to provide a complete response to the Interrogatory.

---

**INTERROGATORY 2:**     Please state the names, job titles (as of the date of **Flight 1087**) and current assigned base locations of all **ATL Station Employees** who worked on January 21, 2016 at ATL and who had any duties relative to: (a) the aircraft that arrived as Flight 1087; (b) passengers arriving on Flight 1087; or (c) passengers departing on the same aircraft that had arrived as Flight 1087. For each such person identified, please describe what knowledge each such person has of any of the events described in the Complaint filed in this civil action.

**ANSWER:**

Harold Ras – Customer Service Manager
Current assigned base: Miami, FL.

Mr. Ras has no recollection of this incident.

Gustavo Fernandes-Nunes – Agent who met Flight 1087
Current assigned base: No longer with American Airlines
Mr. Fernandes-Nunes has no recollection of this incident or flight.

Emmanuel Wigginson – Agent who met Flight 1087
Current assigned base: No longer with American Airlines

**DEFICIENCIES:**     This answer fails to provide any information on the knowledge held by Mr. Wigginson. Although it indicates that he is no longer employed by American, American's response for Mr. Fernandes-Nunes, who is also no longer employed by American, indicates that American can and probably did track down Mr. Wigginson and interview him. American should be ordered to provide a complete answer to this

Interrogatory. If American did not interview Mr. Wigginson, it should provide his contact information so that Plaintiff's counsel can do so.

---

**INTERROGATORY 4:**     Please identify by nose number, United States FAA registration number, serial number, manufacturer and model, the aircraft that was operated as **Flight 1087**.

**ANSWER:**

Aircraft: SP80
Tail # 467

**DEFICIENCIES:**     This answer provides only some of the specific information requested. The full information is necessary to determine the interior cabin configuration of the subject aircraft, which is relevant to the testimony of the parties and witnesses concerning where they were when they allege that certain events happened. American should be ordered to provide a complete answer to the Interrogatory.

---

**INTERROGATORY 5:**     Please state the **Race** and **Ethnic Affiliation** of Captain James Medd, Employee Number 13569, who was the Captain of American Airlines Flight 683 between Detroit Metropolitan Wayne County Airport (DTW) and Miami International Airport (MIA) on June 29, 2007.

**OBJECTION:**     Defendant objects to this Interrogatory as irrelevant and harassing. Plaintiff is already aware that the interaction between Ms. Courtney and Mr. Medd involved TSA security clearance and had nothing to do with either parties' [*sic*] race and/or ethnic affiliation. Further, this incident took place 9.5 years before the Incident that is the basis of this suit and has no relation to any of Mr. Madison's claims.

21

**ARGUMENT:**     The background concerning the incident with Captain Medd is described above, in connection with the similar Interrogatory (#4) propounded to Defendant Courtney. It appears to be the only documented time that Courtney ever complained about a pilot, finding fault with nearly everything he did during a flight. If he belongs to an ethnic or racial minority, that certainly is relevant to the proof of her animus toward non-white people. The time period is not a limiting factor--bigots are frequently lifelong bigots. The Captain's comment, "let's stir the pot and get this out in the open," suggests an ulterior motive for the complaint. Again, prior instances of discriminatory treatment of others is relevant circumstantial evidence of racial animus. There is nothing "irrelevant and harassing" about the Interrogatory, and American should be ordered to respond to it.

---

**INTERROGATORY 6:**     Please identify by name, address, telephone number, **Race** and **Ethnic Affiliation** each passenger whose name appears in the unredacted version of **Courtney**'s written summary dated May 7, 2001 of an incident that occurred on "Flight 36" that was operated by **American** between Los Angeles International Airport (LAX) and Washington Dulles International Airport (IAD) on May 5, 2001, which written summary was provided by counsel for **American** to counsel for Plaintiff in redacted form in the prior litigation between Plaintiff and **American** in California state court.

**OBJECTION:**     Defendants [*sic*] object to this Interrogatory as irrelevant and harassing. Plaintiff is already aware that the interaction between Ms. Courtney and this passenger was related to the passenger wanting to know what she was going to be served for dinner while Ms. Courtney and other flight attendants were trying to perform dinner

service and had nothing to do with either parties' [*sic*] race and/or ethnic affiliation. Further, this incident took place nearly 15 years before the Incident that is the basis of this suit and has no relation to any of Mr. Madison's claims.

**ARGUMENT:**        This is a documented instance of Defendant Courtney becoming irate at a passenger, and this passenger, like Plaintiff, was a non-white passenger occupying a seat in First Class. The trigger for Courtney's hostility was the passenger asking what she was going to be served for her meal, an objectively reasonable thing to ask, especially for a passenger who ordered a special meal due to dietary restrictions. Courtney responded by restricting the passenger to water service only, and trying to get the Captain to have her met by police at the destination airport and arrested. Again, other instances of discriminatory conduct toward non-white passengers is highly relevant circumstantial evidence of racial animus. The length of time between that event and the event alleged in the Complaint is of no consequence if Courtney is a lifelong bigot. American should be ordered to provide a complete response to this Interrogatory.

---

**INTERROGATORY 9:**    Please identify by title, presentation date(s), and general description of content, each and every lecture, workshop, training modality, course or other type of training offered to **Courtney** by **American** or on **American**'s behalf, at any time from the date of **Courtney**'s initial employment by **American** to the present date, on the subject of diversity in the workplace concerning **Race** and/or **Ethnic Affiliation**.

**ANSWER:**    Defendant is searching for responsive information. Defendant will supplement if responsive information is identified.

**ARGUMENT:**        Defendant has been "searching" for this information for well over three months now, without producing a single piece of information to Plaintiff. Defendant Courtney testified in her deposition in the prior state court litigation that she received notices from American by email instructing her to watch certain training videos online. She therefore could probably locate the requested information simply by searching her emails. Moreover, American raises her training specifically in its answer to one of Plaintiff's Interrogatories (*see* Answer to Interrogatory 1 propounded to American above, portion relating to Courtney). American should be ordered to provide the requested information by a date certain.

---

**INTERROGATORY 12:**    For any training identified in your answer to Interrogatory 9, please state whether **Courtney** completed the training, the date(s) of such completion, the manner in which she participated (*e.g.*, live seminar, online, self-study) and the scoring (if any) that she received on any test or quiz associated with such training, also providing the grading scale applicable to any such test or quiz.

**ANSWER:**    Defendant is searching for responsive information. Defendant will supplement if responsive information is identified.

**ARGUMENT:**        Normally, such training videos would have a quiz at the end to ensure that the viewer watched and understood the material. American has no excuse for failing to provide an answer to this Interrogatory, and should be ordered to provide responsive information by a date certain.

---

**INTERROGATORY 13:**   Please state the names, job titles and current assigned base locations of all persons who were responsible for providing diversity training to **Courtney**.

**ANSWER:**   Defendant is searching for responsive information. Defendant will supplement if responsive information is identified.

**ARGUMENT:**   There is no validity to American's response. It must know which of its employees, if any, are responsible for providing diversity training to Defendant Courtney. Or, if such training is provided by an outside contractor, it must know the identity of that contractor. American is simply being evasive here. It should be ordered to provide responsive information by a date certain.

---

**INTERROGATORY 12:**   Does **American** contend that **Plaintiff** has made any admission or statement against interest that relates to any issue in this litigation? If so, please state the content of the alleged admission or statement, the date it was made, whether it was oral or written, and the names of any and all witnesses to the alleged admission or statement.

**OBJECTION:**   Defendant objects to this Request to the extent it seeks to require defense counsel, during the discovery process, to reveal their thinking on possible trial strategies.

**ANSWER:**   Subject to and without waiving the foregoing objections, Defendant will supplement should responsive information be identified.

**ARGUMENT:**   This is a standard Interrogatory that has been used without incurring an objection for several decades. Magistrate Judge Horan rejected a similar work product objection in *Gondola,* 223 F. Supp. 3d, at 586. American should be ordered to provide a

complete response to the Interrogatory, not one limited by the improper "subject to" language, *see id.,* at 584-85.

          c.  **Requests to Produce Propounded to Courtney**

**REQUEST 11:**   Please produce any and all **documents and/or electronically stored information** that describe or contain any records of **Courtney**'s participation in any training given by **American** or by anyone acting on **American**'s behalf concerning diversity in the workplace and/or the prevention of discrimination against individuals on the basis of their **Race** or **Ethnic Affiliation**.

**RESPONSE:** Defendant is searching for responsive documents. Defendant will supplement, subject to a protective order, should responsive documents be identified.

**SUPPLEMENTAL RESPONSE:**  Defendant will supplement if responsive documents are identified.

**DEFICIENCIES:**   The Supplemental Response is evasive. Either Courtney has responsive documents proving her participation in diversity training or she does not, but nothing in Rule 34 permits her to leave the request subject to an open-ended search. Courtney has been "searching" now for four months. Courtney should be ordered to provide responsive documents by a date certain, or to provide a response confirming that she has no such documents.

_____

**REQUEST 16:**   Please produce any and all photographs that depict gatherings, parties, or other social events at Whitmoor Country Club and/or Whitmoor Country Club Subdivision during the past seven years.

**OBJECTION:**      Defendant objects to this request as irrelevant and harassing. Plaintiff is conducting an unreasonable fishing expedition, seeking everything in Defendant Courtney's personal life. Defendant further objects that this request improperly invades the privacy of other individuals not associated with this lawsuit and who have no knowledge of the incident made the basis of this suit.

**RESPONSE:** Subject to and without waiving the foregoing objection, no responsive documents have been identified.

**SUPPLEMENTAL RESPONSE:**   After a diligent search, Courtney is not in possession of responsive documents.

**DEFICIENCIES:**      Courtney's Supplemental Response is still subject to the objection, which she has not deleted from her response. "Subject to" responses are improper. *Gondola,* 223 F. Supp. 3d, at 584-85. The request is neither irrelevant nor harassing, because it relates to evidence of membership in a "whites only" social club, which is relevant to the issue of racial animus. Pictures of gatherings would be evidence that no members of color exist. Plaintiff's counsel has, through personal and family affiliations, been associated with a number of country clubs, and it is the rare country club that does not send its members regular newsletters and/or emails that depict gatherings at the clubs (in fact, Plaintiff's counsel cannot think of a single club that does not do so). In addition, it stands to reason that Defendant Courtney, as a member of the country club and resident of its dedicated subdivision, would have access to parts of those entities' websites that are restricted to members. Although she claims in her Supplemental Response that she is not in "possession" of any such documents, the standard under Rule 34 is "possession, custody or control." Fed. R. Civ. P. 34(a)(1). There is no reason why Courtney could not produce

pictures available to members on the entities' websites, and she should be ordered to produce them by a date certain.

---

**REQUEST 17:**   Please produce any and all **documents and/or electronically stored information** that contain **Social Media** content created by, shared by, forwarded by, retweeted by, "liked," or otherwise commented on by, **Courtney** on each and every **Social Media** website or application on which she has an account, from January 1, 2015 to the present date.

**OBJECTION:**   Defendant objects to this request as irrelevant and harassing. Plaintiff is conducting an unreasonable fishing expedition, seeking everything in Defendant Courtney's personal life. Plaintiff is not entitled to unfettered access to Defendant's social media accounts.

**RESPONSE:** Defendant will attempt to produce her social media activity from January 1, 2015 to February 29, 2016.

**DEFICIENCIES:**   Despite the offer to provide a limited set of social media postings (*i.e.,* her social media activity from January 1, 2015 to February 29, 2016), Courtney *has produced none to date*. And as noted above, Plaintiff must prove racial animus, and is allowed to do so through circumstantial evidence. Defendant Courtney's postings on social media sites can provide relevant and valuable circumstantial evidence of her general and specific attitudes toward non-white and minority persons.   Magistrate Judge Horan recognized in *Gondola* that social media postings are not exempt from normal discovery, *see Gondola,* 223 F. Supp. 3d, at 589-91, while noting that some limitations on such discovery are necessary to prevent "unfettered access," *see id.* at 591. Unfortunately, the

highly relevant topic of racial animus does not lend itself easily to instructions that would describe exactly what types of postings must be disclosed. Defense counsel at one point offered to print out the postings and provide them to Plaintiff's counsel, but has not acted on that offer in the numerous weeks since it was made. If the Court will not grant Plaintiff's counsel access to the sites to review their content, then Plaintiff respectfully submits that the extreme importance of this type of discovery should mandate an *in camera* review of the full content of the postings made to sites like Facebook, Instagram and LinkedIn. And since every tweet made by every subscriber to Twitter was archived in the U.S. Library of Congress between 2010 and December 31, 2017, *see* "Library of Congress Will No Longer Archive      Every      Tweet,"      https://www.npr.org/sections/thetwo-way/2017/12/26/573609499/library-of-congress-will-no-longer-archive-every-tweet?t=1535988648472 (December 26, 2017)(last accessed September 3, 2018), Defendant Courtney should be required to produce all of her tweets during that same period since they are in the public domain and she is in the best position to collect and produce them.

d.   **Requests to Produce Propounded to American**

**REQUEST 9:**      Please produce any and all **documents and/or electronically stored information** that describe or refer to any complaint received by **American** between January 1, 2003 and the present date that describes any type of actual or alleged discrimination by an agent or employee of **American** against any person on the basis (or alleged basis) of the person's **Race** or **Ethnic Affiliation**.

**OBJECTION:**      This discovery Request is not proportional to the needs of the case considering that the burden and expense of the requested discovery outweighs its likely

benefit, and, as such, American has limited its search to December 15, 2014—January 21, 2016.

**RESPONSE:** Defendant will produce responsive information subject to a protective order.

**SUPPLEMENTAL RESPONSE:** Please see responsive documents, Bates Labeled [*sic*] AA001580-001581.

**ARGUMENT:** American has received no authorization from the Court for its restriction of the search to the period December 15, 2014 through January 21, 2016, nor has it provided any evidentiary support for its claim that the "burden and expense of the requested discovery outweighs its likely benefit." As Magistrate Judge Horan pointed out in *Gondola*, such an assertion must be supported by affidavits or other evidence: "A party resisting discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." 223 F. Supp. 3d, at 579. Parties are not entitled to craft unilateral limitations on their responses to discovery requests. American should have moved for a protective order if it felt that the request was overly burdensome, but it did not.

The document that it did produce, which it designated confidential pursuant to the omnibus protective order, is a spreadsheet showing eight discrimination complaints over the short timespan unilaterally imposed by American on its response. The names of the claimants have been redacted. There is no basis for the redaction since the document is already protected by the omnibus protective order, and therefore the names of the witnesses will not be exposed in the public record. As witnesses to similar acts of discrimination,

they are highly relevant to the instant case and their identities should be made known to Plaintiff so that depositions can be taken of them.

Moreover, it is highly likely that American possesses more than simply a line item on a spreadsheet concerning those complaints. A spreadsheet summary is not what the request seeks. Specifically, it seeks "any and all **documents and/or electronically stored information** that describe or refer to any complaint received by **American** between January 1, 2003 and the present date…."

In sum, American has avoided the proper discovery request by: (1) unilaterally limiting the timeframe of its response from the timeframe of the Request; (2) redacting critical information concerning the identities of the complainants; and (3) failing to provide all of the documents requested concerning such complaints of discriminatory treatment. American should be ordered to provide a complete response to the Request as propounded.

---

**REQUEST 11:**    Please produce any and all **documents and/or electronically stored information** that describe or contain any records of **Courtney**'s participation in any training given by **American** or by anyone acting on **American**'s behalf concerning diversity in the workplace and/or the prevention of discrimination against individuals on the basis of their **Race** or **Ethnic Affiliation**.

**RESPONSE:** Defendant is searching for responsive documents. Defendant will supplement, subject to a protective order, should responsive documents be identified.

**SUPPLEMENTAL RESPONSE:**    Defendant will supplement if responsive documents are identified.

**DEFICIENCIES:**     As is the case with the identical Request 11 propounded to Courtney and discussed above, the Supplemental Response is evasive. Either American has responsive documents proving Courtney's participation in diversity training or it does not, but nothing in Rule 34 permits it to leave the request subject to an open-ended search. American has been "searching" now for four months. It should be ordered to provide responsive documents by a date certain, or to provide a response confirming that it has no such documents.

---

**REQUEST 14:**   Please produce an unredacted version of the written summary created by **Courtney** and dated May 7, 2001 pertaining to an incident aboard Flight 36 between LAX and IAD on May 5, 2001.

**OBJECTION:**     Defendants [*sic*] object to this Interrogatory as irrelevant and harassing. Plaintiff is already aware that the interaction between Ms. Courtney and this passenger was related to the passenger wanting to know what she was going to be served for dinner while Ms. Courtney and other flight attendants were trying to perform dinner service and had nothing to do with either parties' [*sic*] race and/or ethnic affiliation. Further, this incident took place nearly 15 years before the Incident that is the basis of this suit and has no relation to any of Mr. Madison's claims.

**ARGUMENT:**     The relevance of this incident has been discussed above, in connection with Interrogatory 5 propounded to Courtney and Interrogatory 6 propounded to American. American has produced a heavily redacted report of the incident, and has designated it confidential subject to the terms of the omnibus protective order. There is no reason for the document to be redacted if it is protected from public disclosure by the

32

protective order, nor has American cited any reason for such extraordinary protection. The person who received such outrageous treatment is a witness who can provide relevant and extremely important evidence of Courtney's bias against non-white persons, particularly when they occupy seats in the First Class cabin. American should be ordered to provide an unredacted copy of the report as requested.

---

**REQUEST 15:**      Please produce any and all photographs of Captain James Medd, Employee Number 13569, who was the Captain of American Airlines Flight 683 between Detroit Metropolitan Wayne County Airport (DTW) and Miami International Airport on June 29, 2007.

**OBJECTION:**      Defendants [*sic*] object to this Interrogatory as irrelevant and harassing. Plaintiff is already aware that the interaction between Ms. Courtney and Mr. Medd involved TSA security clearance and had nothing to do with either parties' [*sic*] race and/or ethnic affiliation. Further, this incident took place 9.5 years before the Incident that is the basis of this suit and has no relation to any of Mr. Madison's claims.

**ARGUMENT:**      The Request is neither irrelevant not harassing. Its relevance is discussed above, in relation to Interrogatory 4 propounded to Courtney and Interrogatory 5 propounded to American. And, while the "interaction" may have initially "involved TSA security clearance," in that Courtney appeared at the checkpoint in the airport terminal late for her assigned flight and carrying an expired identification badge, the fact that Captain Medd declined to leave the aircraft that was under his command to come to her aid was merely the trigger for the abusive behavior by Courtney that occurred next (she wrote him up for numerous perceived breaches of protocol during the flight), just as the non-white

First Class passenger's inquiring about the contents of her special meal was the trigger for Courtney restricting her to water service only and seeking to have her arrested, and just as Plaintiff's asking to be served a drink like the other (white) First Class passengers was the trigger for Courtney's outrageous conduct in the instant case. Certainly Captain Medd's race is relevant to this case, and just as certainly American should be able to locate and produce a photograph of him. The Court should order it to do so.

Plaintiff reserves the right to seek an award of his costs following the ruling on this Motion.

## L.R. Civ. 7.1(b) CERTIFICATE

Co-counsel for Plaintiff, John McKay, and counsel for Defendants, Allison Schluckebier, have discussed the subject matter of this Motion to Compel on numerous occasions and have been unable to reach agreement on the specific matters described above.

DATED this 11th day of September, 2018.

ABRAHAM, WATKINS, NICHOLS,
SORRELS, AGOSTO & AZIZ

*/s/ Muhammad S. Aziz*
_____
MUHAMMAD S. AZIZ
Texas Bar No. 24043538
maziz@awtxlaw.com
800 Commerce Street
Houston, Texas 77002
(713) 222-7211
(713) 225-0827 (Fax)
*Co-counsel for Plaintiff*

34

PARK AVENUE LAW LLC

   */s/ John D. McKay*
John D. McKay
127 W. Fairbanks Ave., No. 519
Winter Park, FL 32789
johndmckayatty@gmail.com
(800) 391-3654
(407) 264-6551 (Fax)
*Co-counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that the foregoing instrument was served on all counsel of record via this Court's electronic case filing system in accordance with the applicable Federal Rules of Civil Procedure on this 11th day of September, 2018

.

*/s/ Muhammad S. Aziz*
Muhammad S. Aziz