**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JEROME MADISON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:18-cv-00671-O** |
| | § | |
| **CHAROLETTE FAYE COURTNEY and AMERICAN AIRLINES, INC.,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

**ORDER**

Before the Court are Plaintiff Jerome Madison's Amended Motion in Limine, (ECF No. 76), filed December 24, 2018, and Defendants' Joint Response, (ECF No. 92), filed January 14, 2019. In his motion, Madison seeks to exclude all Defendants' expert witnesses. Having considered the briefing and applicable law, the Court finds that Madison's motion, (ECF No. 76), should be and is hereby **GRANTED in part** and **DENIED in part**.

## I. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. This Rule incorporates the principles articulated by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Under *Daubert*, expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988–89 (5th Cir. 1997). The district court is charged with making this preliminary determination as a gatekeeping function that filters the evidence the trier of fact will deliberate.

*Daubert* lists five non-exclusive factors to consider when assessing the scientific validity or reliability of expert testimony:

1. Whether the theory or technique has been tested;
2. Whether the theory or technique has been subjected to peer review and publication;
3. The known or potential rate of error of the method used;
4. The existence and maintenance of standards and controls in the methodology; and
5. Whether the theory or method has been generally accepted by the scientific community.

*Daubert*, 509 U.S. at 593-95. These factors are not necessarily limited to scientific evidence and may be applicable to testimony offered by non-scientific experts, depending upon "the particular circumstances of the particular case at issue." *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). Either way, the *Daubert* analysis focuses on the methodology employed by the expert, not the ultimate conclusion. *Watkins*, 121 F.3d at 989. The purpose of this inquiry is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 618 (5th Cir. 1999) (quoting *Kumho Tire*, 526 U.S. at 152). Thus, the court "must

review only the reasonableness of the expert's . . . approach, together with his particular method of analyzing the data . . . to draw a conclusion regarding the specific matter to which the expert testimony is directly relevant." *American Tourmaline Fields v. Int'l Paper Co.*, No. 3-96-CV-3363-D, 1999 WL 242690 at *2 (N.D. Tex. Apr. 19, 1999) (citing *Kumho Tire*, 526 U.S. at 154).

The test of reliability is a flexible one. As the Supreme Court has recognized, the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150; *see also Watkins*, 121 F.3d at 988–89 ("Not every guidepost outlined in *Daubert* will necessarily apply to expert testimony."). A district court has wide latitude in deciding how to determine reliability, just as it has considerable discretion with respect to the ultimate reliability determination. *Kumho Tire*, 526 U.S. at 152.

Moreover, "the rejection of expert testimony is the exception rather than the rule." *See* FED. R. EVID. 702 advisory committee note. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see also In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994), *cert. denied*, 115 S.Ct. 1253 (1995) ("The grounds for the expert's opinion merely have to be good, they do not have to be perfect.").

Nevertheless, "[a] district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). Put differently, "[t]he expertise of the witness must . . . be relevant. To be relevant, there must be a connection between the expert's specialized knowledge and the facts in issue." *M3 Girl Designs, LLC v. Blue Brownies, LLC*, No. 3:09-CV-2390-F, 2012 WL 12885635, at *1 (N.D. Tex. June 1, 2012) (citing *Daubert*, 509 U.S. at 591–92).

## II. ANALYSIS

### A. The Retained Experts

After Madison moved to exclude Defendants' expert witnesses, Defendants filed their joint witness list. *See* ECF No. 83. That filing lists only three individuals as expert witnesses. *Id.* at 7–10. And in their response to Madison's motion, Defendants clarified, "Defendants plan to offer the witnesses designated as 'non-retained expert witnesses' as lay witnesses only." Defs.' Resp. Mot. Exclude 15, ECF No. 93. Presumably, Sue Odom is among those individuals that Defendants now intend to call, if at all, as a lay witness, because she is not designated as an expert on the witness list, *see* Defs.' Witness List 7–10, ECF No. 83, and Defendants do not respond to Madison's challenges to her as an expert in their response to Madison's motion in limine, *see generally* Defs.' Resp. Mot. Exclude, ECF No. 93. The Court therefore recognizes only Doug Stimpson, Dr. Mark E. Gannaway, and Kathleen Lord-Jones as the Defendants' designated experts.

#### 1. Doug Stimpson

Madison first argues that Stimpson and Dr. Gannaway may not be called as experts to opine on whether there was mucus in Madison's beverage. *See* Pl.'s Br. Supp. Mot. Exclude 5–7, ECF No. 76. He contends that both men are not qualified and that, even if qualified, they intend to provide testimony that is both irrelevant and unreliable.

Specifically, as to Stimpson, Madison argues that the witness "completely discounted, for no stated reason, the eyewitness testimony of the two parties who saw and handled the drink" and instead "essentially dunked various materials into a beverage until he arrived at something that was similar in appearance to the photographs he was furnished." *Id.* at 5. And Madison notes that "none of Stimpson's experiential education ever involved the identification of mucus (or substances appearing to be mucus), or the testing of foreign objects in beverages." *Id.* at 6.

The Court finds that Stimpson is qualified to testify as an expert witness. "The Court may 'insist that [the] proffered expert bring to the jury more than the lawyers can offer in argument.'" *M3 Girl Designs*, 2012 WL 12885635, at *1 (quoting *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992)). While Madison is correct that none of Stimpson's training has dealt with recreating the appearance of mucus in a beverage, that oversimplifies what Stimpson can offer the jury that the lawyers cannot offer through argument. Stimpson, as Defendants explain, "has extensive experience in identifying items contained in liquid." Defs.' Resp. Mot. Exclude 7, ECF No. 93 (citing Defs.' Resp. App. 43, ECF No. 94). And Stimpson's task, as Defendants also point out, was not to recreate mucus in a beverage—it was to analyze photographic evidence and recreate that scene through materials Stimpson understood to be present and available, or likely present and available, on the aircraft. And "[t]he methodology and testing used by Mr. Stimpson" to achieve that goal "are those that he has used 3,000 times." *Id.* at 8 (citing Defs.' Resp. App. 44, ECF No. 94); *see id.* at 10 ("All opinions offered by Mr. Stimpson are based on a careful application of the scientific method as outlined in the International Civil Aviation Organization ('ICAO') Annex 13. He examined the photographs. He determined what items are found on an aircraft that could have contaminated the drink. He determined what the drink was made out of. He then began to combine the various items with the drink to see if he could recreate the photo . . . Mr. Stimpson has used this methodology in every accident he investigates, which is over 3,000 accidents.").

Stimpson's report asserts that the process he used to replicate what he observed in Madison's photograph is a process "taught at the University Of Southern California Viterbi School Of Engineering Aviation Safety And Security Program" and is "consistent with the requirements of the International Civil Aviation Organization (ICAO) for accident investigation." Defs.' Resp. App. 4, ECF No. 94. While Stimpson was not charged with investigating an aircraft accident, his

testimony relies on the use of a technique that "has been tested" and "subjected to peer review" and that is "generally accepted by the scientific community." *Daubert*, 509 U.S. at 593–95.

Madison's motion is therefore **DENIED** as to the testimony of Doug Stimpson.

2. Dr. Gannaway

As to Dr. Gannaway, Madison asserts the witness "provides absolutely no testing or other methodology for his identification" and instead "relies on a citation to Wikipedia." Pl.'s Br. Supp. Mot. Exclude 7, ECF No. 76. He also argues that "dentists typically deal with saliva in the mouth, not mucus expectorated from nasal cavities or throats" and suggests that "nearly every human being on the planet knows what mucus looks like, so his testimony does not assist the trier of fact." *Id.* (citing FED. R. CIV. P. 702). Defendants respond that different "types of 'spit' have different characteristics," that Madison's claims turn on "proving that the substance in the drink is one of those items," and that, "based on his extensive education, training, and experience in dentistry for 37 years," Dr. Gannaway can provide testimony on "the characteristics of saliva, mucus, phlegm, and sputum so that a jury can understand the differences between them." Defs.' Resp. Mot. Exclude 13, ECF No. 93.

The Court finds that Dr. Gannaway is not qualified to testify as an expert on the relevant facts. Dr. Gannaway's report, as Madison points out, admittedly provides a series of definitions gathered from Wikipedia. *See* Defs.' Resp. App. 62, ECF No. 94. In other words, it appears Dr. Gannaway, instead of turning to medical or dental publications, merely ran a Google search for the terms "saliva" and "mucus," pasted the results, and then concluded, "These listed secretions would probably have a different look than what I see in the photographs," with no explanation of how his special knowledge or training assisted him in reaching an expert conclusion. *See id.* at 62–63. Dr. Gannaway did not even attempt to explain how his conclusion was guided by his expertise.

Based on Dr. Gannaway's report, there is no indication his "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; it is unclear that his "testimony is based on sufficient facts or data" because it involves only Wikipedia definitions; and, as a result, it is difficult to know whether "the testimony is the product of reliable principles and methods" or if "the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702. It would be unduly prejudicial to allow Defendants to enlist a dentist to report the content of a Wikipedia page, thereby cloaking generally available information with the veneer of medical expertise.

Accordingly, Madison's motion is **GRANTED** as to the testimony of Dr. Gannaway.

3. Kathleen Lord-Jones

Madison finally opposes the expert testimony of Lord-Jones on two grounds. First, Madison asserts Lord-Jones may not be permitted to testify as to whether Defendant Courtney violated an "acceptable standard of care" or whether Courtney's actions were "the result of racial discrimination" because this is not a negligence case and because Lord-Jones has "absolutely no training" that would allow her to opine on whether negligence or legal discrimination occurred. Pl.'s Br. Supp. Mot. Exclude 8, ECF No. 76. Second, Madison argues Lord-Jones may not testify as to "whether she believes that the substance in the drink is spit" because "[n]o basis whatsoever is stated for such an opinion" and "[a]llowing her to testify as an expert would inject speculation and guesswork into the record in the guise of expert testimony." *Id.*

Defendants respond, "Lord-Jones will not be offering her opinion as to what is the substance in the beverage." Defs.' Resp. Mot. Exclude 14, ECF No. 93. Instead, "Lord-Jones' experience as a flight attendant qualifies her to offer opinions and testify as to what tasks Flight Attendant 1 (which Ms. Courtney was on the date of the incident) is responsible for during

boarding and take-off." *Id.* Defendants also assert "Lord-Jones plans to offer opinions regarding how flight attendants are trained for beverage service and what to do when they encounter a passenger working during the flight, which Plaintiff admits he was," and Lord-Jones will "offer[] reasons why it is unlikely that a flight attendant would spit in someone's drink." *Id.* Defendants finally contend that, as it relates to whether Defendant Courtney engaged in racial discrimination, "It is well within [Lord-Jones's] experience to state whether she believes a flight attendant's actions are within her training or based on circumstances on-board an aircraft or not." *Id.* at 15.

Defendants' witness list states that Lord-Jones will discuss the boarding process, the duties of the "number one flight attendant," "offer opinions as to why service in the first-class cabin may be interrupted during the boarding process," "offer opinions on whether Ms. Courtney followed approved procedures in her hanging of Mr. Madison's jacket," "offer opinions about whether Ms. Courtney complied with the standard of care during the boarding process," describe "the training flight attendants receive and how to approach a customer who may be sleeping or working during beverage service," opine on "whether [Defendant Courtney's] conduct was appropriate on Flight 1087," offer "opinions regarding OSHA mandated training for flight attendants and how to respond to bodily fluid exposure and how to use universal precautions to prevent possible contaminants to spread," and testify as to "what possible ramifications would be for a flight attendant spitting in a drink and whether she believes that the substance in the drink is spit," among several other things. Defs.' Witness List 9, ECF No. 83.

The Court finds Lord-Jones may testify on the subjects listed for Lord-Jones in Defendants' witness list, with one exception. While Defendants represent in their response to Madison's motion that "Lord-Jones will not be offering opinions as to what is the substance in the beverage," Defs.' Resp. Mot. Exclude 14, ECF No. 93, Defendants' witness list states that Lord-Jones will opine on

"whether she believes that the substance in the drink is spit," Defs.' Witness List 10, ECF No. 83. Lord-Jones may not testify as to what she believes is the substance in the drink, as shown in Madison's photograph, because that would not be Lord-Jones's "specialized knowledge" being used to "help the trier of fact to understand the evidence." FED. R. EVID. 702(a); *see Wilson*, 163 F.3d at 937 ("A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify . . . on a given subject.").

In addition, Lord-Jones may not testify as to whether she believes Defendant Courtney engaged in racial discrimination. Whether Courtney engaged in racial discrimination is the legal issue in this case. "It is not for [the expert] to tell the trier of fact what to decide." *Askanase v. Fatjo*, 130 F.3d 657, 672 (5th Cir. 1997). And an expert witness is not permitted to offer conclusions of law. *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009). Lord-Jones may rely on her expertise to explain flight-attendant training, what might have led Courtney to take certain actions, and whether Courtney was adhering to a "standard of care" as that term is used to describe the kind of service flight attendants are trained to provide, but Lord-Jones may not speculate as to whether she believes Courtney was engaged in discrimination.

Accordingly, Madison's motion is **GRANTED in part** and **DENIED in part** as to the testimony of Kathleen Lord-Jones.

**B. The Lay Witnesses**

The Defendants have re-listed Sue Odom (challenged by Madison as a retained expert) and the non-retained experts as lay witnesses. Madison's challenges to these individuals as experts, retained or otherwise, are therefore now moot. Madison may, however, challenge their use as lay witnesses before or during trial. The Court notes that, even if Defendants intend to call these individuals as lay, rather than expert, witnesses, Defendants must still ensure their testimony

complies with Federal Rule of Evidence 701. *See generally United States v. Haines*, 803 F.3d 713 (5th Cir. 2015). And Rule 701 was specifically designed "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." FED. R. EVID. 701 advisory committee's note.

**C. Additional Issues**

First, Madison asserts that Defendant Courtney's testimony as "*admit[ing] in her deposition that the substance was mucus*." Pl.'s Br. Supp. Mot. Exclude 2, ECF No. 76 (emphasis in original); *see also id.* at 5 (claiming both Madison and Defendant Courtney "concluded that the foreign object was mucus"); *id.* at 7 ("Again, identification of the substance as mucus is not a point in issue after Madison and Courtney both identified it as such."); *id.* at 8 ("[T]he substance has already been identified by both Madison and Courtney as mucus."). In his response to Defendants' motion for summary judgment, Madison similarly cited Defendant Courtney's deposition testimony as evidence that Courtney admitted the substance was mucus. *See* Pl.'s Resp. Mot. Summ. J. 22, ECF No. 66.

At one point in her deposition, Courtney stated, "I saw something in his drink. A foreign object, a foreign substance." Defs.' Mot. Summ. J. App. 53, ECF No. 64. She was then asked, "And that's what you described as mucus," to which Courtney replied, "That would be my guess." *Id.* For one thing, it is not clear Courtney is stating there that it would "be her guess" that the substance was mucus—it instead appears it was her "guess" that she "described [it] as mucus" at some previous time, which is the question the attorney deposing her asked. Furthermore, Courtney stated only ten lines later, "I don't know what was in his drink." *Id.* And earlier in the deposition, Courtney was asked point blank, "Was there spit in his drink," to which she responded, "No." *Id.* at 50. She then stated, "I don't know what was in his drink." *Id.* And when asked, "What did it

look like to you," Courtney offered, "It looked like mucus. Gum, mucus, spit." *Id.* It would therefore be a misrepresentation for counsel to state in an unqualified way before the jury that Madison "admitted," "concluded," or "identified" that the substance was mucus.

Relatedly, Madison is further instructed not to misrepresent this Court's findings. While Madison suggests "identification of the substance as mucus is not a point in issue," *id.* at 7, this Court expressly found, "Whether there was mucus in Madison's drink and, if so, where it came from are disputed material facts," Jan. 8, 2019 Order 11, ECF No. 90. That is, in part, why this matter is proceeding to trial.

Additionally, the supplemental report of Doug Stimpson is not untimely. *See* Pl.'s Br. Supp. Mot. Exclude 5 n.2, ECF No. 76 ("In the event Stimpson is not excluded, Plaintiff moves to strike the supplemental report as being improper under Rule 26."). While Stimpson's supplement was served *after* the July 9, 2018 deadline for the designation of experts, it was served on August 6, 2018, four months *before* the deadline for pretrial disclosures. And Under Rule 26, an expert's *supplement* is due on or before the deadline for pretrial disclosures. *See* FED. R. CIV. P. 26(e)(2) ("For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.").

Finally, Madison will be permitted 15 minutes for supplemental voir dire and Defendants will be permitted 15 minutes for supplemental voir dire. Both sides will be permitted 10 minutes for opening statements. And Plaintiff will have 12 hours and Defendants will have 12 hours to present and cross-examine witnesses.

## III. CONCLUSION

For the foregoing reasons the Court **GRANTS in part** and **DENIES in part** Madison's Amended Motion in Limine, ECF No. 76.

**SO ORDERED** on this **26th day** of **January, 2019**.

Reed O'Connor
UNITED STATES DISTRICT JUDGE